UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES DEAN MCMANUS,<br>Successor-In-Interest to<br>CHARLENE DANELLE AGNEW<br><br>    Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. CIV-23-354-AMG<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

James Dean McManus ("Plaintiff"), Successor-in-Interest to Charlene Danelle Agnew ("Claimant") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Claimant's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. (Doc. 1). The Commissioner has filed the Administrative Record ("AR") (Doc. 8), and the parties have fully briefed the issues (Docs. 14, 16, 17).[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 10, 11). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

1

**I.     Procedural History**

Claimant filed an application for DIB on September 30, 2019, alleging a disability onset date of June 2, 2017. (AR, at 184, 185-90). The SSA denied the application initially and on reconsideration. (*Id.* at 71, 73-78, 79-97, 98). A telephonic administrative hearing was held on September 1, 2022. (*Id.* at 37-70). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Claimant was not disabled. (*Id.* at 15-29). The Appeals Council subsequently denied Claimant's request for review. (*Id.* at 1-4). Thus, the ALJ's decision became the final decision of the Commissioner. *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

**II.    Administrative Decision**

At Step One, the ALJ found Claimant had not engaged in substantial gainful activity from June 2, 2017, the alleged onset date, through her last date insured, September 30, 2022. (AR, at 21). At Step Two, the ALJ found Claimant had the following severe impairments: degenerative disc disease, hypertension, carpal tunnel syndrome, right hip disorder, left shoulder disorder, hyperparathyroidism, osteoarthritis of the hands, plantar fasciitis, right iliotibial band syndrome, and osteoarthritis of the knees. (*Id.*)

At Step Three, the ALJ found Claimant had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*. at 22). The ALJ then determined Claimant had the RFC

> to perform light work as defined by 20 CFR 404.1567(b) except that the claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant can frequently handle and finger. The claimant can occasionally reach overhead.

(*Id.* at 23). Then, at Step Four, the ALJ found Claimant could perform her past relevant work as a call center clerk and a sales clerk. (*Id.* at 27-28). Thus, the ALJ found Claimant had not been under a disability from June 2, 2017, the alleged onset date, through the date last insured, September 30, 2022. (*Id.* at 28-29).

### III.   Claims Presented for Judicial Review

Plaintiff raises two issues on appeal. First, Plaintiff contends the ALJ erred in his evaluation of Claimant's subjective reports of pain. (Doc. 14, at 5, 13-21; Doc. 17, at 2-5). Second, Plaintiff asserts the ALJ erred by failing to perform a function-by-function analysis of Claimant's ability to stand, walk, and sit. (Doc. 14, at 5, 21-25; Doc. 17, at 5).

In response, the Commissioner asserts the ALJ properly considered and reasonably accounted for Claimant's subjective reports by limiting her to a full range of light work with postural and manipulative limitations. (Doc. 16, at 3-13). Additionally, the Commissioner contends the ALJ properly assessed a residual functional capacity ("RFC")[2] for a range of light work. (*Id.* at 13-15).

### IV.   The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical,

---

[2] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a).

3

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. § 404.1521; *see id.* §§ 404.1502(a), 404.1513(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's RFC, whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Plaintiff bears the "burden of

establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id*. "The claimant is entitled to disability benefits only if [he or she] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

    This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023) (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010); *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (defining substantial evidence as "more than a scintilla, but less than a preponderance"). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir.

2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002). But "an agency decision that either applies an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli*, 84 F.4th at 905.

## V. The ALJ's Evaluation of Plaintiff's Subjective Reports is Supported by Substantial Evidence.

Plaintiff contends the ALJ erred in his consideration of Claimant's subjective reports of pain and limitations. This Court's review of the ALJ's consideration of Claimant's subjective reports is guided by two principles. First, such "determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Second, "findings as to [subjective reports] should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (citation and additional alteration omitted). Generally, the ALJ considers the objective medical evidence, daily activities, medical treatments and their side effects, if any, and any alternative treatment. 20 C.F.R. § 404.1529(c).

Following a thorough discussion of the medical evidence of record (AR, at 24-26), the ALJ set out his findings regarding Claimant's subjective reports and the determined RFC. (*Id.* at 26-27). Specifically, the ALJ explained:

> [T]he record shows that the claimant experiences some pain in her back, neck, feet, hands, and knees, but she has been able to treat all of her pain and impairments conservatively with pain medication and steroid injections. Additionally, the claimant stopped receiving treatment via pain management

6

in early 2019, and did not receive recurring treatment for her pain again until early 2022 when she hurt her lower back while bending over, for which she also treated with conservative treatment that included pain medication. The record shows that despite her intermittent findings of pain and limited range of motion, the claimant has had a normal gait, full strength and intact sensation in her extremities, normal range of motion throughout her musculoskeletal system, negative straight leg raise testing, normal cardiovascular findings, and full grip strength bilaterally [(AR, at 304-06, 329, 337-38, 351, 371-73, 380-81, 391-93, 411, 524-25, 561-67, 668-71, 677, 754-56, 768)]. These objective findings show that the claimant is capable of performing light exertional work with additional limitations. Lastly, the initial consultant's opinion is not persuasive despite being supported with a review, as it is inconsistent with the record, as discussed above, the record shows that there is sufficient evidence to establish the claimant has several severe physical impairments that limit her to performing light exertional work.

(*Id.*)

The ALJ began with noting Claimant's treatment has been conservative in nature and that she did not receive pain management treatment from 2019 to 2022. (*Id.*) Plaintiff contends the ALJ erred in his failure to consider that Claimant lost her health insurance in 2019 and was unable to pursue pain management care until 2022 when she received health insurance through Senior Care. (Doc. 14, at 18). However, a medical record from December 15, 2020, indicates, "Patient gave verbal consent to have these services billed to their insurance and expressed understanding that co-insurance and deductible may apply." (AR, at 539). Additionally, her pharmaceutical records dated from September 17, 2020, through December 9, 2021, reveal twenty-eight prescriptions billed to Claimant's insurance, with each itemization indicating the amount insurance saved Claimant. (*Id.* at 742-46, 749-50).

When Claimant injured her lower back in January 2022 and sought treatment at an emergency room, she explained that she "has had a[n] extensive back issue since a teenager, states has been in pain management for years but has since stopped approximately two years ago, [] reports she bent over to pick something up and heard her back pop and has had pain and difficulty ambulating or moving about since . . . denies any other complaints or needs." (*Id.* at 677). The medical record does not indicate an explanation from Claimant that she had not sought pain management for those years because of a lack of insurance.

When she returned to the emergency room on February 10, 2022, the examining physician noted her visit the previous month and stated that she "failed to follow up with a [primary care physician]." (*Id.* at 704). Upon discharge, the physician "insisted to the patient that she needs to establish with a primary care physician and have her chronic pain treated by the primary care or get a referral to a pain management clinic." (*Id.* at 707).[3] Again, the physician never noted a report from Claimant that she had been without health insurance.

Claimant did not testify during the administrative hearing that there was a time period she did not seek treatment due to a lack of insurance. The only support in the record for this assertion is from March 22, 2019, when Claimant reported that she was "in between insurance right now." (*Id.* at 440). There is no evidence that this lack of insurance lasted a

---

[3] One week later, Claimant had established care with Moore Care. (*Id.* at 755-56).

long period of time or affected her ability to obtain pain management treatment. Instead, the evidence indicates that she had insurance *at least* by September 17, 2020. (*Id.* at 742).

The ALJ also discussed Claimant's daily activities noting that she "watches her grandson at times, generally addresses her personal care needs with some minor difficulties, prepares simple meals, drives a vehicle, shops in stores, handles her finances, and is able to follow written and spoken instructions." (*Id.* at 24). This summation is supported by the Function Reports completed by Claimant and her niece, Amanda Tovar. (*Id.* at 234-41, 253-60).

Plaintiff complains that the ALJ ignored nuances regarding Claimant's daily activities. Specifically, in her Function Report, Plaintiff stated that she cannot stand at a stove long enough to make meals and instead, uses the microwave and eats meals out of cans. (Doc. 14, at 16). Ms. Tovar indicated that Claimant could prepare simple meals stating that she prepares "mostly sandwiches or snacks – frozen quick dinners or simple microwave dinners." (AR, at 236). None of this is inconsistent with the ALJ's consideration of Claimant's ability to "prepare[] simple meals." (*Id*. at 24).

Plaintiff makes a similar argument regarding the ALJ's reliance on Claimant's care for her grandson. (Doc. 14, at 16). He contends the ALJ failed to consider that Claimant used to care for her grandson on a full-time basis and at the time of the decision, she could no longer do so. (*Id.*) Notably, the ALJ did not state that Claimant cared for her grandson full-time. Instead, he accurately stated that she watched her grandson "at times." (AR, at 24). This assessment is fully supported by Claimant's Function Report, in which she stated that she watched her grandson "sometimes" but cannot lift/hold him, as well as Ms.

9

Tovar's, which stated that Claimant provided for all of her grandson's care and needs, except that she could not lift him. (*Id.* at 235, 254, 257).

The ALJ's reliance on Claimant's ability to "*generally* address[] her personal care needs with some minor difficulties" and drive her car is also supported by substantial evidence. (*Id.* at 24, 235-37, 254, 256, 257) (emphasis added). Indeed, two to three times per week, Claimant drove for Uber Eats with her best friend who delivered the food while Claimant drove. (*Id.* at 257).

Plaintiff also challenges the ALJ's characterization of Claimant's medical treatment as conservative. (Doc. 14, at 16-18). He essentially argues that repeated injections for pain inherently negate such a characterization. *Id.* However, neither the Tenth Circuit nor this Court has adopted a bright line rule that injections for pain are inherently non-conservative treatment. Indeed, many cases include references to such treatment as conservative in nature. *See, e.g., Barnhill-Stemley v. Colvin*, 607 F. App'x 811, 815 (10th Cir. 2015) (noting a physician's record characterizing injections for pain as conservative treatment); *Green v. Barnhart*, 67 F. App'x 518, 521 (10th Cir. 2003) (affirming ALJ's evaluation of subjective pain reports where he characterized the plaintiff's treatment, including various injections for pain, as conservative); *Brittain v. O'Malley,* No. CIV-23-425-STE, 2024 WL 873055, at *6 (W.D. Okla. Feb. 29, 2024) (affirming ALJ's evaluation of subjective pain reports where he characterized the plaintiff's treatment, including injections for pain, as conservative); *Allen v. Kijakazi,* No. CIV-22-138-AMG, 2023 WL 3259498, at *6-7 (W.D. Okla. May 4, 2023) (affirming ALJ's evaluation of subjective pain reports where he characterized the plaintiff's treatment, including "regular epidural steroid injections," as

10

conservative treatment); *Copeland v. Comm'r of Soc. Sec'y Admin.,* 2018 WL 1479479, at *3, 4 (E.D. Okla. March 27, 2018) (affirming ALJ's evaluation of subjective pain reports where he characterized the plaintiff's treatment, including "regular epidural steroid injections," as conservative treatment); *Blackwell v. Colvin*, No. CIV–13–534–D, 2014 WL 3420491, at *3 (W.D. Okla. July 14, 2014) (noting a physician's record characterizing epidural steroid injections as conservative treatment); *Jones v. Colvin*, No. CIV–13–580–HE, 2014 WL 2522311, at *4 (W.D. Okla. April 29, 2014) (affirming ALJ's evaluation of subjective pain reports where the plaintiff had only undergone conservative treatment measures, including a series of facet joint injections).

Finally, Plaintiff contends the ALJ was overly selective in his consideration of the objective medical evidence, focusing only on those portions of the medical record supporting a finding of non-disability. (Doc. 14, at 19-20). In his decision, the ALJ concluded:

> [T]he objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations.
>
> . . . .
>
> . . . The record shows that despite her intermittent findings of pain and limited range of motion, the claimant has had a normal gait, full strength and intact sensation in her extremities, normal range of motion throughout her musculoskeletal system, negative straight leg raise testing, normal cardiovascular findings, and full grip strength bilaterally.

(AR, at 25, 27) (citing *id.* at 304-06, 329, 337-38, 351, 371-73, 380-81, 391-93, 411, 524-25, 561-67, 668-71, 677, 754-56, 768). The record as a whole does include medical visits in which Claimant had positive straight leg raise testing and/or complaints of pain, upon

11

which Plaintiff relies in asserting this argument. However, it also contains records, some of which the ALJ cited above, that indicated more positive medical reports, including full range of motion and/or Claimant's denials of pain. (*Id.* at 329, 339-40, 372-73, 377, 383-84, 388, 392, 396-97, 400, 405, 412-13, 422, 427-28, 433-34, 442, 445, 447, 524-25, 530, 535-36, 542, 669-70, 674-75, 706, 768, 781-82, 789-90). It is clear from the decision that the ALJ considered all of this evidence (AR, at 25-27).

In essence, Plaintiff's arguments regarding the ALJ's evaluation of Claimant's subjective reports — as well as his weighing of medical evidence — turn on his contention that the evidence could support a different conclusion. Thus, Plaintiff simply disagrees with the conclusions drawn by the ALJ, and his disagreement is centered on arguments that would impermissibly require this Court to reweigh the evidence. *See White*, 287 F.3d at 909 (recognizing that much of the medical evidence was in conflict but the ALJ weighed all the evidence in reaching his decision and the court could not "now reweigh that evidence and substitute [its] judgment for his"). *See also Fannin v. Comm'r, SSA*, 857 F. App'x 445, 448 (10th Cir. 2021) (noting that reweighing the evidence "exceeds the scope of substantial-evidence review"); *Alarid v. Colvin*, 590 F. App'x 789, 795 (10th Cir. 2014) ("In citing what he contends is contrary evidence [to the ALJ's conclusion regarding the severity of the claimant's impairments] Mr. Alarid is asking us to reweigh the evidence, which we cannot do."). Accordingly, the Court finds Plaintiff's assertion of error fails.

**VI.    The ALJ Properly Evaluated and Determined Claimant's RFC.**

Next, Plaintiff argues the ALJ erred by failing to conduct a "function-by function" assessment of Claimant's ability to stand, walk, and sit as required by Social Security

Ruling ("SSR") 96-8p. (Doc. 14, at 21-25). In the decision, the ALJ found that Claimant had the RFC to perform "light work as defined in 20 CFR 404.1567(b)" with specific postural and manipulative limitations. (AR, at 23). The Social Security Regulations define light work as involving standing or walking a total of approximately six hours in an eight-hour workday. 20 C.F.R. § 404.1567(b).

Social Security Ruling 96-8p states that "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *3. The Ruling explains that at step four, the RFC should not be initially expressed in terms of exertional work categories (sedentary, light, medium, heavy, or very heavy) because the first issue at this step is whether the claimant is able to do past relevant work as she actually performed it. *Id.* A function-by-function analysis ensures the ALJ does not overlook "limitations or restrictions that would narrow the ranges and types of work an individual may be able to do." *Id.* at *4. Where it is clear the ALJ considered the functions, the Tenth Circuit does not require a separate discussion of each one. *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014).

Plaintiff argues the ALJ failed to assess the RFC using the function-by-function approach. The Court rejects this argument. At step four, the ALJ found Claimant could perform her past relevant work. At the beginning of the RFC analysis, the ALJ stated his conclusion that Claimant had the RFC to perform light work with accommodations (AR, at 23), but he did not end the analysis there. The ALJ explained in detail how he reached his conclusion that Claimant had the RFC to perform light work. (AR, at 25-27). He

13

discussed evidence regarding Claimant's ability to walk, stand, and sit throughout his discussion of the record. (AR, at 25-27). As previously established, the ALJ reviewed Claimant's subjective reports alongside her daily activities, objective medical evidence, almost three-year gap in medical treatment, and physician opinions. (*Id.*) He discussed Dr. James Metcalf's consultative reviewing opinion in which Dr. Metcalf concluded Claimant could stand and/or walk and sit for six hours out of an eight-hour workday. (AR, at 26-27, 90-95).[4] The ALJ discussed medical evidence that revealed time periods in which Claimant experienced varying degrees of back pain and limitations in motion, as well as time periods in which she denied back pain and enjoyed full range of motion. (*Id.* at 25-27) (citing *id.* at 90-95, 304-06, 329, 337-38, 351, 371-73, 380-81, 391-93, 411, 524-25, 561-67, 668-71, 677, 754-56, 768). He also noted that from early 2019 until early 2022, Claimant did not seek pain management care until she injured her lower back. (*Id.* at 27). Thus, the ALJ considered Claimant's RFC on function-by-function basis. The fact that the ALJ's decision set forth the RFC first and then explained his reasoning, as most administrative decisions are structured, is not error.

---

[4] To the extent Plaintiff challenges the ALJ's evaluation of Dr. Metcalf's opinion based on an assertion that the ALJ did not discuss the supportability of the opinion (Doc. 14, at 23-24), this argument is without merit. The ALJ specifically noted that Dr. Metcalf's opinion was "supported by [Dr. Metcalf]'s review and is consistent with the record," which the ALJ had discussed in detail prior to consideration of the opinion. (AR, at 26). *See, cf., Best-Willie v. Colvin*, 514 F. App'x 728, 733 (10th Cir. 2013) (holding that when the ALJ sufficiently discusses the medical evidence, the record as a whole may provide support for a physician's opinion as consistent with the evidence, even if there was not a contemporaneous discussion).

## VII.  Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **AFFIRMS** the decision of the Commissioner for the reasons discussed above.

**SO ORDERED** this 18th day of April, 2024.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE